Adams, J.
This case comes into this court on error. The plaintiff in error was the plaintiff below, and brought her action as administratrix of the estate of Patrick McCarty, deceased, against the Baltimore & Ohio Railroad Company, and Cowan and Murray, Receivers of the Baltimore & Ohio Railroad Company, to recover damages for the next of kin of Patrick McCarty, caused by his wrongful death on January 4, 1896.
I will say in passing that the Sandusky, Mansfield & Newark Railroad Company is brought in as lessor of the railroad, and that Cowan and Murray are brought in as receivers, although it is alleged that they were appointed receivers more than a month after this accident occurred. There seems to have been some doubt in the minds of counsel who drew this petition as to the exact time of the appointment and qualification of these receivers, and these receivers were made parties out of an abundance of caution.
So far as the case is presented to this court, it is only necessary to notice the issues made by the petition and the answer of the Baltimore & Ohio Railroad Company and the reply of the plaintiff to that answer.
All charges of negligence in the petition are made against *538 the Baltimore & Ohio Railroad Company, and the claim would be made against the other parties more as a legal question if the negligence of the Baltimore & Ohio Company should be established.
The case was tried to a jury, and, at the close of the plaintiff’s testimony,the trial judge directed a verdict for the defendants. There was a motion for a new trial overruled, and they have a bill of exceptions here which sets forth all the evidence. The action of the court in directing a verdict is the principal error assigned; and then there -is another error assigned on page seven of the bill of exceptions as to the exclusion of certain testimony.
The petition alleges that Patrick McCarty, on January 4, 1896, lost his life; that the Baltimore &Ohio Railroad Company, at that time and a long time prior thereto, operated a railroad; that Patrick McCarty was in the employ of this railroad company, in this county, as foreman of a section, and it was his duty to work on the line of said railroad, and while engaged in the line of his duty, on January 4,through the negligence of the said Baltimore & Ohio Railroad Com-, pany, in the operation of a locomotive and train of cars attached thereto, and without any negligence on the part of said Patrick McCarty, he was run over,crushed and instantly killed.
The petition further alleges that the engineer, fireman and train-men in charge of said locomotive and train, negligently omitted to keep any lookout for the said Patrick McCarty, and neglected to give any signal by bell or whistle or otherwise of the approach of said locomotive and train of cars, and the said company carelessly neglected to exercise any proper care or precaution by prescribing a rule requiring warning to be given of the approach of locomotives and trains of cars to the said Patrick McCarty and other track-men so employed on the line of railroad, and by reason of said careless and negligent acts in failing to prescribe such a rule, and in failing to give any notice by bell or whistle or otherwise, to the said Patrick McCarty, of the approach of said locomotive and train of cars, and in failing to keep any lookout,or give any warning to the said Patrick McCarty,he was"then and there, while so engaged in the line of his duty, run, over and killed. And that his death was caused solely *539 by the said negligent act of the said defendant, the Baltimore & Ohio Railroad Company, and without any negligence on the part of said Patrick McCarty. And then there is an allegation that he left a widow and three minor children surviving him, giving the names and ages of the children, with a prayer for damages.
The answer of the Baltimore & Ohio Railroad Company, so far as this issue is concerned, denies all acts of negligence on its part, and sets up contributory negligence on the part of McCarty, which allegation of contributory negligence is denied by the reply.
I will take up the question as to directing the verdict first. It has grown almost into a custom for lawyers and a great many courts to criticize what is known in Ohio as the scintilla rule; and whether that rule ought to be changed by statute or not is a debatable question. Yet, as far as this court is advised, the rule is still in force in Ohio, and, whatever may be the opinion of the members of this court as to the wisdom of the rule or otherwise, we are bound to follow it. That rule is: if, at the close of the plaintiff’s testimony, he has offered evidence tending to prove the material allegations of the petition,the case cannot be taken from the jury, but must be submitted to them under proper instructions. Speaking for myself, I might say that, if we are to have more than a form of jury trials, I cannot see how any other rule can logically be applied to the trial of cases; but that does not aid us in the disposition of this matter.
The facts in this case, as disclosed by the testimony, are that McCarty was foreman or boss of a section gang; that the accident occurred on his part of the line of road; that a train of cars had run off the track northwesterly on the Baltimore & Ohio, and Big Four crossing at Shelby Junction; that McCarty and two other men had gone there to make repairs in the track; that the Baltimore & Ohio train, headed northwesterly, was standing on the track, near the station, at Shelby Junction; that this accident occurred between 7 and 8 o’clock in the morning, and there is nothing disclosed here that it was a windy, rainy or stormy day— except that the testimony shows that it was a very cold day. McCarty went down within a few hundred feet of this train, probably within two hundred feet, and another man went to *540 the tool house where an ax was procured, and McCarty and another man were working on the track between the rails; McCarty was using the ax that had been procured at the tool house, and, in his use of this ax, he was facing toward the engine which was headed northwesterly, and the track is comparatively straight there; the testimony shows beyond all question that this locomotive was in full view of anybody standing where McCarty stood; it shows that McCarty was stooping over in his work to the extent that a man would stoop over in using an ax as he was using it,on the ties and on the ground between the rails; that the train, starting up from where it was standing, ran over him and killed him; that the train was running probably from six to ten miles an hour; that the other man who was working on the track with his back to the approaching engine and a few feet nearer the engine than McCarty was, narrowly escaped losing his life; he was struck by the engine, but,as far as this record shows, he was not killed and not seriously injured; at least, there was no showing made here that he was hurt.
The evidence tended to show that the engineer and fireman were not looking out, didn’t have their heads out of the side windows of the cab, and we think the evidence tended to show that they did not see McCarty on the track.
Counsel for plaintiff in error rely upon and cite us. to three cases in Ohio. It is not claimed that these cases are exactly like the case at bar, but it is claimed that they are so near like it that they should have controlled the common pleas court in this action. Of course, these negligence cases are not all exactly alike.
In Dick v. Railroad Co., 88 Ohio St., 389, the facts are disclosed in the opinion of the court, on page 395 (and I may say that Dick was a boss of a section gang), where the court says:
“The evidence strongly tends to show that the locality is a dangerous one; that it was a double or triple curve, and that it was impossible for one engaged at work where deceased was,to see an approaching train but a short distance; that there were several public crossings which the train had to cross in approaching the place where deceased was to work; that it was in a thickly settled neighborhood, within the city limits; that no signal of the train’s approach was *541 given by bell or whistle, either at these crossings or in approaching the curve, which he could have heard, if given, and that the train was engaged in a brisk race with another train on a parallel road. One passenger says: “The train was going at a terrific rate of speed. I was thrown against the window; the velocity of the train threw me.’’ Another says: “The train was behind time and waB racing with the O. & M. train; that in going around this curve, he was thrown off his feet.” Still another gives a graphic description of this exciting race, and several testify that no signals were given. It was a train in charge of a conductor and engineer. There was no evidence tending to show that this dangerous proceeding was owing to the.recklessness of the engineer. For aught appearing, it was in strict accord with the directions of the conductor and.with the rules, and regulations of the company. In the absence of proof to that effect, the court below erred in assuming that Martin Dick came to his death by the negligence of the engineer and in holding, as it must have done, that there was no evidence tending to show that the company was liable.”
The material facts in which that case differs from the case at bar are these: In the Dick case, the train was. running at a high and dangerous rate of speed; it was a double or triple curve, and it was impossible for one engaged where the deceased was to see the approaching train. The facts in this case are: that there was an unobstructed view, and that the train was running at a comparatively low rate of speed.
We are also referred to Railroad Co. v. Margrat, 51 Ohio St., 130. There is nothing in the syllabus of the Margrat case touching on this case, but on page 137 there is a statement of facts of that case and some remarks by the supreme court that throw some light on the case at bar.
“Margrat was in the service of the plaintiff in error, as brakeman, a part of his duties being to help switch cars in its yard at Deshler, in this state, and while there engaged in switching, he received the injuries of which he complained, from a locomotive which, manned by an engineer and fireman, came up from behind and ran over him. Counsel for plaintiff in error contend that he should have either kept off the track altogether,or maintained a lookout for locomotives *542 and cars. The accident occurred about midday; and if it appeared simply that Margrat was on the main track of the company’s roadway and, without looking or listening, permitted a locomotive to run him down, the presumption that he was negligent would, perhaps, be irresistible. Other facts, however, appeared.
“The evidence tended to show that two cars standing in the yard were to be coupled to the train of which Margrat formed a part of the crew; that he was directed to assist in making the coupling and, being then near the front of the train, had to pass to its rear to perform this duty; that his train stood on a side track which, for probably four hundred to six hundred feet from its connection with the main track, ran northward close to and parallel with’ the main track; that the apace between the two tracks was icy, causing its use to be difficult and somewhat dangerous as a way for passing to the rear of the train at the speed Margrat’s duties required him to move; that his train began to move backward toward the cars to be coupled, just as he started towards them; that it was quite difficult, if not wholly impracticable, for him to pass along on the outside of the side track over which his train had begun to back. The only choice of a practicable way then,open to him by which to pass to the rear of the backing train to make the coupling, was to go along the main track, or along the space between the main track and the side track. If he chose the latter, it threw him close to this moving train and, the ground being slippery and uneven, he might be in danger of falling under the cars of which it was composed.
“Under these circumstances, we think it was the duty of the court of common pleas to submit to the jury the question whether Margrat was or was not negligent in choosing the main track, rather than the space between the two tracks, to pass to the rear of his rain, to make the coupling in question.
“It is further contended that, if it was not negligent for Margrat to go upon the track as he did, yet, having gone upon it, he was negligent in permitting the locomotive to overtake and run him down; that, being on the track, he should have looked and listened and, if he had done so, it would have been impossible for the locomotive to take him unaware as it did.
*543 “We are not disposed to ignore or doubt the rule that, under ordinary circumstances, one who goes upon a railroad track should be held to the duty of using his senses of sight and hearing, and, if injured by reason of his failing to dj so, must abide the consequences; but this rule is not to be extended so as to deny, in all cases, relief to one who may be injured on account of such failure. Conditions may exist which will excuse it; did they exist in the case under consideration? The evidence tends to show that Margrat, when the time arrived to do the switching in question, was sitting on the locomotive of his train; that he then looked up and down the track and, although his view extended a great distance in both directions, he saw nothing at all on the main track, but did see the engine that afterward ran him down, standing on a side track about fifteen hundred feet away; that he stepped from the locomotive, with his back toward the distant engine, and proceeded, as we have before seen, along just outside the main track, towards the cars to be coupled. This led him away from and kept his back towards the distant engine; that as the cars to be coupled were to be added to the train that Margrat was connected with, this train began to back towards them as Margrat stepped from the locomotive on which he had been sitting. It was his duty to pass along this train to its rear, as we have seen, so as to be ready to make the coupling when the cars to be coupled were reached. This required some quickness of movement on the part of Margrat, depending upon the length of .his train and the rate of speed at which it was moving, neither of which is very clearly shown.”
Now, it will appear in this case that Margrat looked and saw that the track was clear. In the case at bar, the court is forced to the conclusion that McCarty saw this train headed toward the place where he was at work, and McCarty was facing the engine that ran him down while Margrat was going away from it, under circumstances which led him to believe that there was no engine on the track on which he was walking; because he had looked immediately before he had gone on the track and saw that, for a long distance, the track was clear; he saw the engine that after *544 ward ran him down, on a sidetrack one thoasand five hundred feet away.
The other case to which we are cited is Railway Co. v. Murphy, Adm’r, 50 Ohio St., 135. It is a case counsel are familiar with, where an employe of a railway company,, with a number of other men, called “a gang,” at work doing certain repairs on the track, was, from the very nature of his work, that of fastening bolts, in a stooping position with his head over the rail and close to it, when he was run over by a locomotive; the gang of men was in charge of a boss; no warning was given this man or the other men with him by the boss, and no rule was prescribed by the company requiring a watch to be kept for men who were so engaged on the track. The court held that it may be the duty of the railway company to prescribe rules for the reasonable protection of its employes against dangers of that kind, and that their failure to prescribe and enforce such a rule may be negligence on the part of the company.
In tfie case at bar McCarty was the boss,and it would not. do to say that the railway company must put some one over the section boss himself to guard him and give him notice,, although that may be the rule where it was an inferior and the boss failed to keep watch.
The last paragraph of the syllabus in the Murphy case lays down a rule which will determine this case: ‘‘The evidence as to contributory negligence on the part of deceased1 made a case which, at least, was doubtful, and about which different minds might differ as to the proper inference to be drawn. Such question cannot properly be determined by the court, as a matter of law, and should be submitted to the jury. ”
We think that the court may admit, in the case at bar, that there was evidence tending to show negligence on the part of the company; then the question to be determined is whether, under the evidence,McCarty himself was guilty of contributory negligence so as to bar recovery, which would make it simply a question for the court to determine, without submitting any question of fact to the jury.
We are aware that the statement is made frequently that questions of negligence and contributory negligence are often mixed questions of law and fact; and the rule is that, where the facts are undisputed, and where the facts are *545 such that only one rational inference can be drawn from them, then the question of negligence and contributory negligence is a question of law for the court. And we have in the case at bar, as it was presented to the trial judge, simply this: in broad daylight, a man who had been for years in the employ of the railway company, not in an inferior capacity but as a section boss, seeing a train standing upon the main track, headed in his direction, goes to work between the rails with an ax and allows the locomotive of that train to run over him and kill him. How it could be said that the engineer was negligflnt in not seeing McCarty, and that McCarty was not negligent in not seeing the engine, is something that we cannot understand. The engine was certainly as plainly visible to McCarty, if he had looked, as McCarty would have been to the engineer, if the engineer had looked in his direction.
Jenner & Weldon, for Plaintiff.
Cummings & McBride, for Defendants.
It further appeared in this evidence that McCarty was at work there with a cap drawn over his ears and with a scarf or shawl wrapped around his shoulders; and, if the way in which his head was bundled up prevented his hearing the engine, it only increased the duty on his part to use his sense of sight and keep a better lookout for the locomotive.
Without multiplying words on the subject, we think that the action of the court below in directing a verdict in thisi case was right, so far as the merits of the case are concerned.
As to the exception to the exclusion of evidence on page seven of the record: “Q. You may state whether or not a whistle sounded or bell — you may state whether or not you heard any;” and counsel stated what he expected the answer would be. Now, it may be true that this was a place where-engineers- or firemen of the railway company were not required to ring a bell or sound a whistle for a crossing, but whether or not the whistle or bell was sounded was a fact' which bore upon the question of whether or not the engineer and fireman were looking, and whether they saw McCarty, and we think this evidence ought to have been admitted. But, taking the view we do, that McCarty was guilty of contributory negligence which would bar his recovery, the exclusion of this evidence was not prejudicial to the party’s rights. The judgment of the court below is affirmed.